# BUSINESS LOAN AGREEMENT

Borrower:
RWC Group, LLC
911 William Leigh Dr,
Tullytown, PA 19007

Lender:
Moshe Oz

| Principal | Loan Date | Estimated Maturity | Loan No. |
|---|---|---|---|
| 1,685,000.00 | February 15, 2016 | February 15, 2017 | RWC-0003 |

THIS BUSINESS LOAN AGREEMENT dated February 15, 2016, is made and executed between RWC Group, LLC (hereafter "Borrower") and Moshe Oz ("Lender") on the following terms and conditions.

Borrower has applied to Lender for a commercial loan (the "Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending the Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

1. **TERM**. This Agreement shall be effective as of February 15, 2016, and shall continue in full force and effect until such time as the Loan has been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges.

2. **PRINCIPAL AND INTEREST**. The principal of this Loan is Three Hundred Thousand Dollars ($1,685,000.00). Interest on any unpaid principal shall accrue quarterly, at the rate of twelve percent (12%) per annum.

3. **REPAYMENT**. BORROWER ACKNOWLEDGES AND AGREES THAT THE PRINCIPAL OF THE LOAN SHALL BE PAID BACK TO LENDER IN ONE LUMP SUM.

4. **REPRESENTATIONS AND WARRANTIES**. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times during the term of the Loan:

    4.01. **Organization**. RWC Group, LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the Commonwealth of Pennsylvania.

    4.02. **Authorization to Conduct Business**. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, if any, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Unless Borrower has designated otherwise in writing, the principal office is the office at which

1


EXHIBIT A

Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization, or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

4.03. **Authorization to Enter into Transaction**. Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Borrower's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

4.04. **Legal Effect**. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute, legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

4.05. **Binding Effect**. This Loan are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

5. **AFFIRMATIVE CONVENANTS**. Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

5.01. **Notices of Claims and Litigation**. Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower, which could materially affect the financial condition of Borrower;

5.02. **Financial Records**. Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times;

5.03. **Additional Information**. Furnish such additional information and statements, as Lender may request from time to time;

5.04. **Other Agreements**. Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements;

5.05. **Loan Proceeds**. Unless specifically consented to the contrary by lender in writing, use all Loan proceeds solely for Borrower's business operations;

5.06. **Taxes, Charges and Liens**. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon ay of Borrower's properties, income, or profits;

5.07. **Operations**. Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide

written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

6. **LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's Interest in the Collateral or if Borrower fails to comply with any provision of this Agreement, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under this Loan from the date incurred or paid by lender to the date of repayment by Borrower. All such expenses will become a part of the indebtedness and, at Lender's option, will be payable on demand.

7. **RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in in any money or property due or subject to transfer, for whatever reason, from Lender to Borrower and hereby authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all money or property.

8. **DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

   8.01. **Payment Default.** Borrower fails to make any payment when due under the Loan;

   8.02. **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower;

   8.03. **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter;

   8.04. **Insolvency.** The dissolution or termination of Borrower's going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower;

   8.05. **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute;

   8.06. **Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the total ownership interest of Borrower. For the purpose of this Agreement, a transfer of the

power to vote, whether outright or in trust, or a transfer of economic interest, whether outright or in trust, shall each be deemed a Change in Ownership;

8.07. **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired; or

8.08. **Insecurity.** Lender in good faith believes itself insecure.

## 9. RIGHT TO CURE AND EFFECT OF AN EVENT OF DEFAULT.

9.01. **Rights upon Default.** The rights under Section 9.02 shall be exercisable upon issuance of a written notice of default to Borrower, provided further that such notice (a) gives Borrower an opportunity to cure the default within ten (10) days from the date of such notice and (b) Borrower fails to cure the default.

9.02. **Effect of an Event of Default.** Subject to Section 9.01, if any Event of Default shall occur, all commitments and obligations of Lender under this Agreement will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

10. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

10.01. **Amendments.    Entire Agreement.** This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

10.02. **Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

10.03. **Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

10.04. **Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation

whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interest. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

10.05. **Governing Law**. This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the Commonwealth of Pennsylvania. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

10.06. **No Waiver by Lender**. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

10.07. **Notices**. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required bylaw), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any part may change its address for notices under this Agreement by given formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required bylaw, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

10.08. **Severability**. If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provisions of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

10.09. **Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries of affiliates.

10.10. **Successors and Assigns.** All covenants and agreements contained by or on behalf of Borrower shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

10.11. **Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of this Agreement, shall be continuing in nature, shall be deemed made and re-dated by Borrower at the time each Loan Advance is made (if on different dates), and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

10.12. **Time is of the Essence.** Time is of the essence in the performance of this Agreement.

10.13. **DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms use din the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

10.13.1. **Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

10.13.2. **Agreement.** The word "Agreement" means the Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

10.13.3. **Borrower.** The word "Borrower" means RWC Group, LLC.

10.13.4. **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

10.13.5. **GAAP.** The word "GAAP" means generally accepted accounting principles.

10.13.6. **Indebtedness.** The word "indebtedness" means the indebtedness evidenced by this Agreement.

10.13.7.  **Lender**. The word "Lender" means Moshe Oz, its successors and assigns.

10.13.8.  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or scheduled attached to this Agreement from time to time.

10.13.9.  **Permitted Liens**. The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested

10.13.10.  in good faith; (3) lines of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED February 15, 2016.**

**BORROWER**

RWC Group, LLC:

EVROLD  HENRY, CFO
Print Name and Title

_____
02/10/2016

**LENDER**

Moshe Oz:

_____        _____
Print Name and Title                          02/10/2016

7